First matter is Christy v. Commissioner of Social Security Administration. Mr. Sutton. Thank you, Your Honor. If I may, I reserve three minutes for rebuttal. I appreciate that. May it please the Court, my name is Thomas Sutton and I represent the opponent in this matter, Julian Christy, a client of ours who has been attempting to obtain disability benefits from the Commissioner for many years. A very brief chronology of the case, I believe, is in order, notwithstanding the Court is familiar with the facts, the chronology is crucial to understanding the legal issue at hand. The application occurred before the change of the regulation. That's correct, Your Honor. This application, in particular, in 1995, four years before the change in the regulation. Also, it's important to note that in order to establish disability, Ms. Christy had to prove that she was disabled no later than the end of 1989, a full ten years before the change in the regulation. So what standard in 1989 should... I mean, the standard used in 19... If she was disabled in 1989, would you use the 1989 standard? Yes, Your Honor. Or would you use some later standard? We would use the 1989 standard, which was the same standard that existed up until 1999. So when you're talking about the relevant activity, why wouldn't it be 1989? Your Honor, it could be that, and that is one of the positions that could be adopted. As Justice Scalia pointed out, ascertaining what the retroactivity event is for purposes of this analysis isn't always that clear. You could also look to the application in 1995 and the adjudications initially in a reconsideration in 1995 and 1996 as the retroactivity event that is applicable here. And of course, she sought a hearing before a judge, had a brief hearing in 1997, and then the application was erroneously dismissed on raised judicata grounds in 1998. Again, we're now a year before the change in the regulation. The commissioner then had her appeal pending for over three years, during which time the rug was pulled out from under the case. So your argument could be, something like latches aside, that there was an unreasonable delay here on behalf of the commissioner. And had there not been an unreasonable delay, she would have, or at least had a very good chance, of being deemed disabled at step three. Absolutely, Your Honor. And that's the approach that the Eighth Circuit took in the Ingram case, in which the Court of Appeals didn't squarely address the retroactivity issue, but said, in the circumstances of Ms. Ingram's case, because the commissioner was, quote, inexcusably slow, end quote, in adjudicating the case, the Eighth Circuit ordered that the old standard be applied. Well, that's a factual finding, though, isn't it? I mean, what is unreasonable? That's a paradigm question of fact. It is, Your Honor. I would tell the Court that a three-and-a-half-year delay is at the far reaches. Well, the three-and-a-half-year delay was the delay before the Appeals Council decided, and only about a year-and-a-half of that was under the old standard. That is correct. But it was a two-and-a-half-year delay that preceded that. Yes, it was. So if you add it all together, it's between 1996, when the claim was denied at the first level, first two levels, and 2001, when it was finally remanded with a direction to hold a hearing on the merits, albeit now under the new standard, which includes no listing for obesity whatsoever. Even if we were to take the same view as the majority in Combs, could we still find for your client under this theory that you're advancing right now? I believe you could, Your Honor. First of all, I believe that, as I've said in my brief, that Combs was wrongly decided for the reasons I've laid out there. And the Combs majority relied, I believe, on two primary things. First, deeming this to be a procedural change rather than a substantive one. And I think it's clear from the Landgraf line of cases, and particularly Judge Becker's analysis in our cases in this circuit, that the substantive procedural distinction is fairly ephemeral. And the fact that a rule, even if it is procedural and we wouldn't concede that this one is, we believe it is substantive, really it sounds in burden of proof. Well, Judge Chastler thought it to be procedural, so he invoked the holding of Combs. But then he went on to say there's no vested right, which was the concurring opinion of Holmes. And it's not a bad argument, is it? The Secretary was very clear as early as 1994 that this listing was in flux, that it would be reconsidered, indeed it might expire, 9.00 might expire, it's going to be reconsidered in light of medical evidence and all of those things. So there really was no... Can you seriously say you had a vested right on the date you filed your application to a determination of disability? Your Honor, I believe there are two answers to that question. First, in 1994, the pronouncement or the publication certainly didn't inform any claimant that it was contemplated that this listing would be outright abolished. To say it was in flux is absolutely accurate, Your Honor, but it wasn't. It didn't put anyone on fair notice. It didn't give her a vested right, though. I mean, that's all I'm saying. We're not talking about vested rights, but that's only one prong of the line graph analysis. If you look at the rest of the test and line graph, and if you look at INS versus St. Cyr, which is another very important case in this line, St. Cyr says that a rule is retroactive when it, quote, takes away or impairs a vested right acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed. So without reaching the question of whether rights vest, which is, as Your Honor says, a good argument, and I'm not going to take it on, you look to the second prong, I believe, of the analysis of retroactivity, and I believe that you have to conclude that when someone applies for benefits in 1995, the state of the law is what it is. She has to prove she's disabled in 1989, and this goes, Your Honor, to your other question and to yours as well. Because she has to prove disability at a time when the extent law clearly provided an obesity rule, and the commissioner has to put forth, make a non-proton determination of disability, even now in 2008, he's got to decide whether she was disabled in 1989 or she gets no benefits. That is the dispositive question. And 19 years later, it's quite bizarre. That's correct. It's a matter of law, Your Honor. And that's the position that we're going to be in anyway. So in a case like this where you have both, I would say, an extraordinary delay in adjudication throughout, with this change in the law, this C change, and an individual who has to be found disabled or not based on her condition in 1989, it seems to me that without disagreeing expressly with the majority in Combs, this Court could find that this claimant is entitled to relief on this set of facts because the change in the law is impermissibly retroactive as applied to her. Now, the government says that the burden of proof really hasn't changed. The underlying or overall standard is still the same. It's just that that presumption, of course, was eliminated. And I guess we can get into a debate as to whether that's substantive or procedural and either way we can see good arguments on both sides. How bad is, Ron, I'm sorry, you may want to reply to that, but was any of the delay due to your client's position in any way in this case? No, Your Honor. It really was not, if you look over the facts. It simply was a matter of the scheduling of matters by the agency, a matter completely outside the claimant's control. I think also it was not merely scheduling. It took the ALJ two and a half years to dismiss this without a hearing on res judicata grounds. So that wasn't a scheduling problem. To put a finer point on it, Your Honor, he scheduled a hearing in July 1997. There was discussion with counsel about what would eventuate, and then he didn't rule and issue the res judicata dismissal until March 1998, after the long delay in scheduling a hearing in the first place. Let me go back to basics. Landgraf was quite clear that when a case implicates a federal statute enacted after the events in question, whatever the event might be, the court's first task is to determine whether Congress expressly prescribed the statute's proper reach. If it has, there's no need to resort to the judicial default rule. Now here, in August, the new rule, for lack of another way of putting it, was deemed prospective, and nine months later the commissioner made quite clear that it would apply to cases pending at the date the rule became effective, which was your client's case. Why is that not dispositive of this issue, as to whether the fine rule would apply? If I understand Your Honor's question, going back to first principles, if this were a statute, the analysis would be, did Congress specifically make it specific? This is clearly by analogy. It is by analogy. So now we're at the regulatory level, and we're trading on the commissioner's rulemaking authority, which is a creature of statute, section 405A of the Social Security Act, which the Supreme Court said in Georgetown University Hospital does not extend to making retroactive rules. So our position is, not only did the commissioner fail to announce in August 1999 that this would be applied retroactively to pending cases, wait until March 2000 to do so in an interpretive rule, something not subject to notice and comment, as the actual change in the substantive rule was, the commissioner did not have the authority by its grant of rulemaking authority in the statute to do this on a retroactive basis. So, Your Honor, I believe in that sense it is dispositive of the question. What about the practical implications that the government raises? I mean, they just said it would be a bit of a crazy situation if they had to apply this retroactively in any number of cases. Let's assume we issued an opinion that disagreed with Combs. Well, Your Honor, I would assume that the court's opinion would be, in this case, about this set of facts. With respect to the 1999 change, it's now nine years later. I would submit that there have to be few, if any, claimants in Ms. Christie's position at this point in time. This, of course, is an individual case and not a class action. And I just think that the floodgates argument, which the commissioner raises, is one that really does not comport with what I understand to be the facts. They also say that there's really no showing or allegation of actual prejudice here, and that you still might win under the new standard. Put on five more minutes, Greg. Your Honor, we might and we will try to win under the new standard, but it is very difficult as this court's cases in the years succeeding 1999 show, in particular the Rutherford case, comes to mind. Obesity is no longer a listed impairment. One has to come at this by indirection, and one has to come up with a much greater quantum of proof of functional limitations. The advantage that Ms. Christie has under the old regulation is that there's a conclusive presumption of disability from the showing of specific medical facts. That's the end of the question. And taking that away from her is a substantial material impairment of her ability to prove disability. Which is what the concurring opinion found in Combs. They called it more substantive than procedural. They accepted the dissent's argument that this indeed was a substantive, and yet still did not, still found it impermissibly retroactive. Yes, and with that concurrence, I believe it was Judge Gilman, I believe he's right as to that point, and that he's wrong on the question of reliance, which is what so much of the argument in Combs was about. Now we have laid out the fact that a claimant likens Christie, not her in particular. There is nothing of record, and under Judge Becker's analysis, what I believe is directly on point in Ponnapula, she doesn't have to show actual reliance on her part. But even more so in Atkinson. I'm sorry, Your Honor? Even more so in Atkinson. Yes, in the recent decision of this Court in Atkinson. But that's why I asked the question about this regulation was in flux. It was not a right that had been embedded in stone. It was in flux. So where is the reliance on something that was absolutely likely to change? Your Honor, certainly nothing was written in stone, but this was the law that had been in the Code of Federal Regulations for many years, although the numbering had changed. And the claimant had, I believe, a reasonable expectation that her claim would be decided based on the law as it existed then. However, any law could change in the future. And the publication of something in 1994 that she is on constructive notice of, of course, we all know that's a legal fiction, but that certainly didn't inform her that this particular regulation is about to change, much less how it would change, as in vanish completely from the landscape. That is a major, major change, and it's certainly not something that she could be considering. Why don't we, could we not accurately call it correction of a mistake, which is what essentially the Commissioner said. You know, people, this is not working well. There are people who are not disabled who can engage in gainful employment who are being found to be disabled. There's a mistake here, and we want to correct it. The Commissioner has the rulemaking authority clearly under Section 405A to make that determination prospectively. I wouldn't agree with the characterization of it as a mistake. In fact, I think the mistake is what we have now, which is massively obese people with other medical conditions are denied benefits when I believe the record shows that they are really unable to work and meet the statutory definition of disability, but an avenue of proving that they meet that statutory definition was taken away. So the Commissioner has his point about this. I would only say, whether you agree with that or not, prospective application of that change is what I think Bowdoin v. Georgetown Hospital and Landgraf really... Of course, the Commissioner did say prospective when the rule came into effect. Yes, and without notice and comment outside the API issued an interpretive ruling the next year saying, whoops, no, that's not what we meant. Could the Commissioner have said, we will use the new standard to reevaluate findings of disability found under the old presumption? In order to do that, the Commissioner would have had to change his existing regulations, which as I laid out, I believe, in my reply brief, when they do a continuing disability review of someone already on the rolls, the regulations now and always, to my knowledge, have said, first you look at whether the person still meets today an old listing, even if that listing has been subsequently changed or abolished, and if the person does meet that old listing, even though it's years later, we keep them on disability. Doesn't that answer Judge Sirica's question concerning whether adopting your position would put an unbearable burden on the Commission that they would have to use old standards to judge some cases? I believe it does, Judge Roth, because in fact they use that standard and they process millions of continuing disability reviews as well using those regulations. It's not going to come up that often, and certainly in the context of this case, so many years have passed that Ms. Christie may be in a class of one if this were looked at as a class. Again, it's not a class action, but because Judge Becker is correct in saying we don't look at the particular individual, we look at the people similarly situated and how they would respond and whether it would have been reasonable for them to rely. I think you have to look at the case in that light. If you were to prevail here and if you were to prevail on remand, would benefits be retroactive to 1989? No, Your Honor. They would be retroactive under the current state of the case to 1994, 12 months prior to the filing of the application in 1995, based on the filing of disability in 1989. That would be unless the 1992 application were reopened, which is within the Secretary's discretion but could not be ordered by any federal court. Interesting. Good. Any further questions? Thank you, Mr. Sutton. We'll have you back on rebuttal. Mr. Swartloff. Yes. A lot of points are raised on the—may it please the Court, my name is Arthur Swartloff and I represent the Commissioner of Social Security. A lot of points were raised on the initial argument. I'm not really sure what to start at this point. I do want to note procedurally in this case, however, that the Christie did file many applications and the claim was actually—determinations of the claim were actually made in the old listings as far back as 1985. She had initially submitted an application— She never had a hearing. She never had a hearing and actually—but still, there was an initial determination made specifically with respect to 9.09. What I think is interesting is when it comes back to the res judicata effect in the procedural aspect of this case, a determination had been made on basically the res judicata, when the case came for a hearing, the judge noted that this has already been decided and there are no new issues, therefore, I have no—I'm going to apply res judicata specifically on the issue of the obesity. The reason why the appeals counsel reopened the case was because of new material evidence that Christie had submitted actually on a mental impairment, not on the obesity. And the appeals counsel actually found there was new material evidence on the obesity, but it was reopened basically because of a mental function. There was almost no discussion of obesity in the ALJ's initial decision. Almost nothing. It was really more about the other, wasn't it? Perhaps, but that was not the basis of the reopen— I mean, in which initial decision? Because, again, it was a res judicata decision. It was not—it was based on this. We already decided Christie's disability based on obesity. We decided she wasn't disabled, and since there's no new evidence that we're not going to reopen, we can't re-adjudicate this. Essentially, it was only re-adjudicated because the appeals counsel found we submitted new evidence on the mental impairment. Can you seriously argue that if this case had been decided on the merits prior to October 1999 that she would not have gotten disability? She was, in 1989, when the insured status expired, 323 pounds, 5 foot 3. She had arthritic pain in the spine and knees and degenerative changes by X-ray, seeing on the X-ray. That would have, would it not, have given her a finding of disability at step three, a conclusive presumption, an irrebuttable presumption of disability. No, actually, I do argue in the district court below that she would not have met the listings if the court found against us this particular issue of retroactivity that, essentially, you have to have the degenerative changes and in the weight-affected joint, basically, the range of motion, the limitation of motion and those findings have to be the same joint in which the degenerative changes. You need almost nothing. With that weight and height, you need almost nothing to get for the presumption, the irrebuttable presumption, conclusive presumption to kick in, right? But yet, here, that was one of the reasons why perhaps the rules were changed. We've realized this does not actively reflect disability. It would have been why the rules were changed, but at that time, it would have been a conclusive presumption of disability. If she had met it, but here she didn't because there was no degenerative change. She had no limitation of motion in her knee where the degenerative changes were found. I think Mr. Sutton will go into this a little bit. Okay, but again, notwithstanding, I guess, like he was saying, contrary to what Mr. Sutton said, this case doesn't only apply to a class of one. Basically, the whole thing in this case would apply to any time that the commissioner changes a regulation, and we do change regulations on a fairly frequent basis. As we know, for example... I do want to note that actually there was notice given in the Federal Register as far back as 1985. I didn't know that in my brief, but I did do some more research that specifically stated that the obesity listing would be considered. Again, that's not actual. Like he said, this is considered to be constructive notice to claimant. In the same way, Mr. Sutton argues it's not actual notice, but in the same way, Mr. Sutton doesn't have actual notice, the individual notice of the regulations and everything else to her. Again, like we said before, the actual standard is the disability standard. Ability to do... The inability to do substantial gainful activity. In terms of the retroactivity in this case, I think that Georgetown University... Bowen versus Georgetown University Hospital does talk about secondary retroactivity describing exclusive future effect that does affect past transaction. It gave an example of a case that would not be impermissibly retroactive as a case such as a new taxation on tax income that would be a rule with exclusively future effect that could unquestionably affect past transaction, rendering the previous established trust perhaps less desirable in the future. On the substantive procedural issue, no matter how we characterize it, wouldn't it be correct to say that this change is likely outcome determinative, particularly as regards Ms. Christie? Again, going to the merits of the case, and not necessarily, she can, again, the standard is ability to perform substantial gainful activity, and she can go on and prove if she is disabled. It's really to be how it affects her ability to work, and as the commissioner realized in amending the regulations, it wasn't just a mere mechanical finding that represents the ability to work. There were fact findings, the fact that somebody has a particular weight and has minimally defined arthritis does not correlate with the finding of disability in the meaning of the act. Well, it would under the old 909. Again, that's a question that's subject to debate. Well, you're not willing to give us that, but assuming that it would, is not the answer to Judge Sirica's question, yes? It would be outcome determinative here? In that hypothetical. Yeah. But again, it would not comply with the standard of disability that the court determined. And once again, I think we have to look at what the rules affect, and in this particular case, the conduct that the rules affect is not the person becoming disabled, not the application. As we said, there is no vested right in application of benefits, but really controls the final adjudication of the claim. Doesn't it really control the determination of whether she's disabled or not? Isn't that relevant activity something that occurred back in 1989? It's her condition in 1989 that she is saying, I became disabled then, and I have been disabled ever since. And shouldn't we look to 1989 to make a determination of what constituted disability at that time? Well, like Mr. Sutton even mentioned in his brief, she did not become disabled based on the expectation of receiving disability. I'm not talking about her expectations, I'm talking about her condition and the definition of her condition, and in reviewing that definition, shouldn't we review the definition as it existed in 1989? I don't believe so. Why not? If you look at the land graph analysis, we can see it's not impermissibly retroactive. But isn't the relevant activity her becoming disabled? I don't think so, but the rules do not affect her conduct. The rules affect the adjudication of claims, not becoming disabled. So the rules here in this case is determining agency, this is how you make a determination whether somebody is disabled under the Act. And it does not regulate her activity, it does not regulate her planning really. It really regulates how the five-step evaluation is really a proxy for determining disability. I think the court in Supreme Court in Thomas noted that in that particular case, noted that in reality, the administration made a finding that the plaintiff could not do a pass while working as an elevator operator. The claimant in that case made the argument well, elevator operator does not exist anymore, but the court sort of found that the determination that the plaintiff could perform the job as an elevator operator, whether or not it existed, was really a proxy for determining disability, whether they were actually disabled under the Act, and met the actual definition under the Act. So in a sense, what it's controlling is the definition under the Act, but not actually the particular minutia of how we go about determining it. Ultimately, these are rules for an adjudicator to make a determination how somebody is disabled. As also noted in Landgraf, a statute does not operate retrospectively because it's applied in a case arising from conduct anti-dating the statute's enactment or upsets expectations based on the law. So even Landgraf admits that just because maybe at one point in time Christie may have had an expectation that she could be disabled, but like I said before, there really is no expectation because the listings do change. It's not impermissibly retroactive. The court has to ask whether the new provision attaches legal consequences to events completed before the enactment. There was no event completed. Nothing is completed until a final determination is made by the agency. And no final determination had been made until the last AOJ decision in which the Appeals Council denied review. At that point, it became final adjudication. Isn't the five-year delay a factor that... I mean, if this case had proceeded to determination with all due expectation, it would have been decided long before the change. And should we ignore the fact that the commission during that period was so backlogged, so delayed in coming with determinations that what one would expect to be the outcome because of the long delay is no longer the outcome? Well, again, I think it comes back to the relevant activity that the rule is supposed to affect. And it comes back to the determination. So we ignore the delay? I don't think it's really relevant because I think the claimant had no vested rights. A claimant does not have vested rights until they become found to be disabled. Well, maybe the right wasn't vested. But maybe she had a superb shot at being declared disabled. But for the delay. This, again, provides... The rule we're looking at, the retroact, this really affects the commissioner's ability to change their rules to conform with the Ability Act. I don't think it's really based on one particular claimant, but I think it's a much, much larger scheme of things. But what would be the effect on the much larger scheme? Would that deter the commissioner from changing regulations? Would it have a deleterious effect on any change in regulations that the commissioner might propose to make in the future? It would have an effect on the adjudication of the claims and make it much more difficult to adjudicate on a consistent basis. Why would it be difficult? Like you're saying, in this particular case, especially if we take Mrs. Sutton's idea that we look at when the person becomes disabled when they apply. First of all, when a person becomes disabled is an adjudicatory issue. Sometimes in this particular case we have a date left insured. You mean when they become disabled? A person may apply and state, I became disabled as of a certain date, 1980. However, the evidence may actually show they became disabled at a much later date and the judge decides that. So how do we decide what rule to apply at the time they become disabled until we know that they become disabled at a particular time? It's sort of putting the cart before the horse. So in that respect, you really can't use the... Well, isn't the first question whether or not someone became disabled prior to the expiration of the insured period? In this particular case. The other case is an SSI case where there is no insured period and the question is when they became disabled. Are you saying that equitable considerations like latches are never to be taken into account in these kinds of matters? I don't know if I can really... In this particular issue here where the commissioner issues regulations determining how the claimant applies the... I would say no because the relevant activity is the adjudication. But when the adjudication is interminably delayed, is that a factor we simply cannot consider? I guess it comes back to the fact that plaintiff... I think vested rights is important to the case. Going back to the Landgraf analysis, that the claimant really did not have any vested rights that were affected. The right to not vest it until the claimant actually... Why does it have to be a vested right? Why can't it be a legitimate claim of entitlement? Mr. Sutton said he's not following the vested arm. Again, even the definition of entitlement on the act... A legitimate claim of entitlement. Didn't she have that when she filed her application? She had a claim and she had a procedural due process law. But again, the law that applied has... The law that an AOJ applies has to be the law at the time of the decision. Does procedural due process include the state of the law at the time you file your application? The law really goes to, I think, the right to a hearing and the right to present evidence. There really is no right to the law. Again, continuing disability reviews are a different situation. You do apply the listing at the time you're found disabled because the person does have a right when they're vested benefits. Again, I think it's a little different situation because you have a case file. In that particular file you know precisely what rule was used to find that person disabled. It's in the file and it's there when they do the continuing disability review. It's not something that an adjudicator has to start figuring it out and determining what rule do I apply here, what rule do I apply this. Also, there could be different listings to change and amend and an adjudicator would have to figure out what listings to apply when based on when new listings came into being. Here, I think it's the agency's position that when these regulations have been changed in the past and you've complied with the APA and where prospective application is designated that the agency has always treated it in this way and has never made retroactive application. Is that... With respect to rules like this, that's correct. The practical effect you say it would be devastating or I'm not sure that I quite understand why it would be so because of the uncertainty as in applying the old rules and the particular stage when you would have to do that? It would just be extremely difficult if essentially under that meaning of retroactivity the commissioner would have to apply whatever rules were in effect at the time the claim initially applied or in this case as Mr. Sutton talks about when she first alleged to be disabled. And again, when she alleged to be disabled it may not actually be the time that she's ultimately determined to be disabled when she became disabled. So you're saying that this case would open up all other cases where the commissioner determined disability on the date of decision and all those cases would be redetermined? No, no. The new listing, again that would be instrument once a person has benefits, is given benefits they have a vested right to receive those benefits and that's a different situation and you must have shown medical improvement of their condition relative to their condition at the time they were given benefits. So the medical improvement standard is actually a different statutory standard than the initial adjudication. There, the Congress specifically wants the administration to look whether the person's condition changed from point A to point B. So it's a different standard and here we're looking at prospective adjudications initially and... So what is the devastating effect of this case? The commissioners have to in each pending case at every administrative level to ferret out all the regulatory changes that occur between the filing of the claim or even when the person alleged disability and figure out what regulation applied at that particular time. In the disability review it's in the file precisely what was applied. Here in ALJ in all cases we'd have to try and figure out what regulation was in effect at the time. With a computer you'd push a button and you'd have it. But were the regulations as of the state and you would have it. Is that difficult? I don't know if it's that easy because the regulations defined I really can't answer that. It seems to me if you had to do it, you could do it very easily. I don't think with two and a half million cases a year when you already have I think we just add a level of complexity to the case that could make decisions less reliable. And further delayed. Probably, yeah. If there are no further questions, I'm good. Mr. Swerdloff, thank you very much. Mr. Settle. Ron, I will keep this very brief. First of all, this issue of whether the old regulation really would mandate a finding of disability. First of all, I believe that Judge Barry's questions indicate a view which I share that this claimant wouldn't need to recall those regulations. We wouldn't be fighting about this case all these years later if we didn't believe that strongly, but it actually doesn't matter here because while that argument was raised below it's not raised anywhere in the government's brief before this court. The government had the opportunity to argue that this appeal is really moot because she doesn't meet the criteria anyway. It didn't argue that and I believe the court should consider that to be waived. What's the narrowest ground on which you win this particular case? I believe the narrowest ground is one in which the court says this is an individual who had a legitimate expectation when she filed the claim in 1995 and had it adjudicated twice by the agency to have these rules applied at that time. Had an expectation to have a decision on the merits by an administrative law judge in 1997 or 1998 and only because of inexcusable delay by the commissioner was the ability to prove disability under this listing taken away from her. That in these circumstances perhaps also considering Judge Roth's point which is that disability must be proven as of 1989, non-pertinct. Do we have to find a legitimate expectation in order to in order for you to win on the delay issue? Your Honor, I believe that there is something like that that must be found under the Landgraf and St. Cyr line of cases, yes. It does not depend on a vested right, but it certainly does depend on an expectation and fair notice. The retroactivity cases as the court well knows have to do with APA, legislative rule making But it's only constructed notice in these circumstances. Of course, it's not direct notice. And this is an individual the record discloses with borderline intellectual functioning. When Your Honor asked earlier, is any of the delay due to her, not since 1995 because at that point she obtained counsel. She had applied numerous times previously without counsel, had never appealed, and really didn't have the wherewithal the intellectual resources to understand her rights. So, in that sense the earlier delay, which is not before this court, could be laid at her feet, but arguably it's not her fault. You certainly represented her superbly. Thank you, Your Honor. I appreciate that. Anything else? I don't think I don't have anything further. Good. The case was very well argued by both lawyers. We thank you, and we will take the matter under advisement. Thank you, Your Honor.